# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 7, 2013 Session

## RAMEY MICHELLE LONG v. GREYHOUND LINES, INC. ET AL.

### Appeal from the Circuit Court for Hickman County
### No. 105006C      Robbie T. Beal, Judge

---

### No. M2012-02677-COA-R3-CV - Filed June 19, 2013

---

Motorist brought suit against multiple defendants for injuries arising out of two car accidents. The trial court granted summary judgment in favor of two defendants. Because genuine issues of material fact preclude summary judgment, we reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, JR., J., joined.

Michael S. Long, Memphis, Tennessee, for the appellant, Ramey Michelle Long.

T. Franklin Gilley, III, Murfreesboro, Tennessee, for the appellees, Judith R. Adair and Carol L. Casteel.

### MEMORANDUM OPINION[1]

FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a March 18, 2009 accident between a car driven by Ramey Long ("Ms. Long") and an eighteen-wheeler driven by Bruce Cannode ("Mr. Cannode") and owned by Rose Farm Trucking, Inc. At about 5:00 a.m., Ms. Long was driving westbound

---

[1] This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case. Tenn. R. Ct. App. 10.

in the left lane on I-40 near mile marker 158.[2]  As she attempted to pass it, the eighteen-wheeler and Ms. Long's car collided.  Ms. Long's car came to a stop in the left lane and remained in a smashed, inoperable state after the collision.  The front left brake booster and tire of Mr. Cannode's truck were visibly damaged.  Meanwhile, another truck diver, Gilberto Montez ("Mr. Montez"), arrived to the scene, parked his truck in the emergency lane, and went to render aid.  Ms. Long got out of her car and crossed the interstate to get to the emergency lane.[3]

Around the same time, Judith Adair ("Ms. Adair") was driving along the same westbound route in an SUV belonging to her passenger, Carol Casteel ("Ms. Casteel").  They came upon the accident and Ms. Adair brought the SUV to a complete stop in the right lane without hitting anything.  Then, a large Greyhound passenger bus that Glen Reid ("Mr. Reid") was driving in the right lane rear-ended the SUV, propelling it into the emergency lane and adjacent grassy area.  The SUV struck Ms. Long and dragged her into a drainage ditch.  Ms. Long ended up underneath the SUV and ultimately suffered serious spinal fractures.

Ms. Long filed a complaint asserting negligence claims against Ms. Adair, Ms. Casteel, Mr. Cannode, Rose Farms Trucking, Mr. Reid, and Greyhound Lines, Inc. Mr. Reid, Ms. Adair, Ms. Casteel, Mr. Cannode, Ms. Long, Mr. Montez, and State Trooper Henley gave deposition testimony.[4]  This appeal concerns Ms. Casteel and Ms. Adair.  The trial court denied Ms. Casteel's and Ms. Adair's initial motion for summary judgment, but granted their renewed motion for summary judgment by order entered November 6, 2012.  The trial court found:

> that the additional evidence brought before the court since the original Motion
> for Summary Judgment was filed and heard, namely, the deposition testimony

---

[2] Interstate 40 has two westbound lanes at this location.

[3] The record contains differing accounts of what happened immediately after Ms. Long's car came to a halt in the left lane.  In her brief, Ms. Long states that Mr. Cannode stopped his eighteen-wheeler in the emergency lane on the far right side of the interstate, ran across two lanes to Ms. Long, pulled her out of her car against her will, and took her to the emergency lane where he and Mr. Montez physically restrained her from returning to her car.  However, Ms. Long's deposition (to which her brief cites) is missing from the record. Mr. Cannode testified that Ms. Long had exited her car by the time he arrived, that he never touched her, and that Mr. Montez and another trucker were actually the ones who restrained Ms. Long.  Mr. Montez, a non-party, testified that he parked his truck in front of Mr. Cannode's truck, "ran up to" Mr. Cannode and Ms. Long, and followed Mr. Cannode's instructions to "watch over" Ms. Long.

[4] The testimony will be discussed in further detail below as relevant to the issue on appeal.

of Gilbert Montez, substantiates that Carol Casteel and Judith Adair, in bringing their vehicle to a complete stop, took appropriate action. As such, there is no breach of any standard of care nor any negligence on behalf of these Defendants.

On appeal, Ms. Long contends that summary judgment was inappropriate and that the trial court abused its discretion in determining that Ms. Adair and Ms. Casteel did not act negligently or breach any standard of care.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). In reviewing a summary judgment, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).[5]

## ANALYSIS

Because summary judgment is predicated on the absence of material factual disputes, we must consider Ms. Long's contention that disputed material facts actually exist.

---

[5] Tennessee Code Annotated § 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan*, is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011).

In her complaint, Ms. Long alleges that Ms. Adair and Ms. Casteel directly and proximately caused her injuries by "negligently stopping the vehicle on the travel portion of the roadway and remaining for an unreasonable amount of time after ascertaining that they could safely proceed." In their statement of undisputed material facts, in their deposition testimony, and on appeal, Ms. Adair and Ms. Casteel assert that Ms. Adair brought the SUV to a complete stop in the right-hand lane behind a tractor-trailer without making impact with any other vehicle. In reciting the events leading up to the Greyhound bus's collision with the SUV, Ms. Casteel testified, "When we [s]topped around there, there was a truck stopped in the right-hand lane. There was a white vehicle blocking the left lane and we managed to get stopped behind the truck in the right lane." Ms. Casteel further testified that Mr. Cannode's truck was the one stopped in front of the SUV that Ms. Adair was driving:

> Q. The truck that was damaged is the same one that was stopped in front of you?
> A. Yes, sir.
> Q. Was that Mr. Cannode's truck?
> A. I think so because I think Mr. Montez was driving the truck that was pulled off in front of that one.
> Q. Mr. Montez['s] vehicle was farther down the road?
> A. Yes.
> Q. Let me make sure I understand then. The truck that had collided with the plaintiff's vehicle was the one you stopped behind?
> A. Yes, sir.

Later in her deposition, Ms. Casteel stated that she and Ms. Adair may have stopped behind Mr. Montez's truck.

In her narrative, Ms. Adair, the driver of the SUV that was propelled onto Ms. Long, recounted, "We came around a curve, saw brake lights ahead of us. And realized there was some type of problem in front of us. So, I slowed our car down, and got almost to the back of that semi, but I did get our car stopped." Ms. Adair further testified that, upon seeing the approaching Greyhound bus in her rearview mirror, she thought, "he's going to hit us," so she turned her wheel to the right because she feared she and Ms. Casteel "were going to be pushed right into the semi."

Ms. Long's theory is that Ms. Adair and Ms. Casteel "should not have stopped their vehicle in the right hand lane of the roadway when they had a clear roadway in front of them and could have safely continued on their journey rather than suddenly stopping in the roadway." In response to Ms. Adair's and Ms. Casteel's statement of undisputed facts in support of summary judgment, Ms. Long denied that there was a tractor trailer stopped in the

right lane when Ms. Adair and Ms. Casteel arrived on the scene and averred that "Cannode's truck and Montez['s] truck were parked over 300 feet away from the accident scene and were parked on the right shoulder of the roadway in the emergency lane."  In complete contrast to Ms. Adair's and Ms. Casteel's testimony as to the existence of a stopped truck in the right lane, Mr. Cannode testified:

> Q. You stated that after the collision with Ms. Long, that a tractor trailer came through the right lane and possibly some other vehicles; is that right?
> A. Yes, sir.
> Q. And this was prior to the collision between the Greyhound bus and Ms. Adair's vehicle?
> A. Yes, sir.
> Q. So there's nothing blocking the right lane?
> A. No, sir.

Mr. Cannode additionally testified that "everybody was on the shoulder."

The testimony of Mr. Reid, who was driving the Greyhound bus that rear-ended the SUV, also contrasts with Ms. Adair's and Ms. Casteel's testimony:

> Q. All right.  After your impact with the SUV and you stopped, did you observe any other tractor trailers ahead stopped ahead of your vehicle?
> A. Yes.
> Q. How many did you see?
> A. One.
> Q. Where was it stopped exactly?
> A. Further down from the SUV right hand berm.
> Q. Was it in the emergency lane?
> A. In the berm; yes.
> . . .
> Q. That's the emergency lane?
> A. Breakdown lane.

Mr. Montez, a non-party witness, also recounted the events as he observed them:

> Q. Okay.  Do you know what caused the SUV to stop?  Was there a vehicle in front of it that prevented it from going forward or?
> A. I think she–the two ladies in the SUV saw this accident as they were coming up on it, and they stopped in front of it or right by it.  And she couldn't do anything about being hit from the back.

. . .

Q. Did you ever, before the accident, ever see that the right lane was blocked
by any other vehicles?
A. Before the accident?
Q. Right.
A. No.

Mr. Montez testified that the right lane was clear from the time he arrived to the scene through the time of the Greyhound bus's impact with the SUV. Additionally, Mr. Montez described a photograph[6] of the roadway that was taken after emergency personnel arrived:

Q. Okay. And the two trucks that we see in the distance, are those again still
your truck and then the truck that you believe Mr. Cannode was driving?
A. Right.
Q. Okay. Did those trucks move at all during all of the various events?
A. The semis?
Q. Yes.
A. No.

Having reviewed the conflicting testimony of witnesses who were involved in the accident between Ms. Long and Mr. Cannode and the accident between the Greyhound bus, Ms. Adair, Ms. Casteel, and Ms. Long, we have determined that a factual dispute exists concerning a material fact, that is, whether there was a truck stopped in the right lane when Ms. Adair and Ms. Casteel's vehicle arrived at the accident scene.[7] This disputed fact pertains to the trial court's finding that Ms. Adair and Ms. Casteel "took appropriate action" in completely stopping their vehicle in the right lane and, thus, to whether their actions constitute negligence. Generally, "negligence cases are not amenable to disposition on summary judgment." *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997) (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 775-76 (Tenn. 1991); *Keene v. Cracker Barrel Old Country Store, Inc.*, 853 S.W.2d 501, 502-03 (Tenn. Ct. App. 1992)). However, any civil case, including a negligence case, may be resolved at the summary judgment stage if the matter "can be and should be resolved on legal issues alone." *Fruge*, 952 S.W.2d at 410 (citing *Mansfield v. Colonial Freight Sys.*, 862 S.W.2d 527 (Tenn. Ct. App. 1993)). Based on the facts in this record, the present case does not qualify for summary judgment disposition. Resolving the conflicting testimony as to whether Ms. Adair and Ms. Casteel could have

---

[6] This photograph was entered as an exhibit to Mr. Montez's deposition.

[7] Another disputed fact that is material is whether the SUV's headlights and taillights were turned on. It is undisputed that it was dark outside at the time of the accidents.

proceeded to drive through the accident scene without stopping and determining the reasonableness of their actions is a task for the jury.

CONCLUSION

Having independently reviewed the facts and having resolved the inferences from them in Ms. Long's favor, we find that the facts Ms. Long alleges to be in dispute are material and, therefore, are a bar to summary judgment. We, therefore, reverse the trial court's judgment and remand this matter for further proceedings. Costs of appeal are assessed against the appellees, Judith Adair and Carol Casteel, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE